# Thatcher, Appellant, *v.* Pierce.

*Practice, C. P.—Directed verdict—Appeals—Evidence—Case for jury.*

1. Where the court below has directed a verdict for defendant in an action for damages, the plaintiff's testimony on appeal must be taken in its most favorable light.

2. In answering the question whether there is sufficient evidence on behalf of the plaintiff to submit to the jury, it is immaterial how strong the defendant's testimony may be.

*Negligence—Automobiles—Ownership—Presumption—Evidence —Hiring out trucks—Leasing.*

3. To charge with liability for damages due to a motor accident where it appears defendant owned the car, it must be shown the driver was his servant, and at the time engaged in his master's business.

4. Where a truck or car is used for business purposes and is identified as the property of the owner, a presumption arises that it was engaged in the master's business.

5. Such presumption continues until the contrary appears, which is shown when the testimony to establish nonuser in the master's business comes from a disinterested witness whose candor cannot be doubted, and is not in itself improbable, or at variance with proved or admitted facts, or with ordinary experience.

6. There is a distinction between pleasure cars and business trucks as to the quality of proof required to establish liability.

7. It is the duty of the owner of a leased truck to furnish a competent driver with the necessary skill to perform the work contemplated; whether he does so or not is ordinarily for the jury.

8. Where one engaged in the business of hiring out trucks, hires out a truck for hauling purposes, and through his driver has sole control of driving, speed, operation and management of the truck as it performs the work for which it is leased, and the lessee does not interfere with the driving of the truck, or its mechanical operation, the owner is liable for the negligence of the driver.

9. In such case, the business of the owner of the truck included its operation and driving while engaged in the hauling for which it was leased.

Argued April 29, 1924.  Appeal, No. 337, Jan. T., 1924, by plaintiff, from judgment of C. P. Crawford Co., Feb.

T., 1922, No. 33, on verdict for plaintiff, in case of Irene Thatcher, widow of Wallace Thatcher, deceased, v. Clyde W. Pierce. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ. Reversed.

Trespass for death of plaintiff's husband. Before Prather, P. J.

The opinion of the Supreme Court states the facts.

Judgment on directed verdict for defendant. Plaintiff appealed.

*Error assigned* was direction for defendant, quoting record.

*Albert L. Thomas,* for appellant.—The court lost sight of the fact that there was no denial of the ownership of the truck and the employment of the driver, and at the time of the accident the truck was to all intents and purposes used in the business for which it was kept by appellee. There is a distinction between pleasure cars and business trucks as to the quality of proof required to establish liability: Sieber v. Ice Cream Co., 276 Pa. 340.

In the case at bar the truck did not bear appellee's name, but it was owned by him, operated at the time by his driver and used in the same manner generally used by him. Certainly this raises a stronger presumption in appellant's favor than were he compelled to rely on the lone fact that the truck bore the defendant's name: Williams v. Floral Co., 252 Pa. 140; O'Malley v. Public Ledger Co., 257 Pa. 17; Holzheimer v. Lit Bros., 262 Pa. 150; Treon v. Shipman, 275 Pa. 246.

The question whether the driver was acting within the scope of his employment, was clearly a question of fact for the jury: Guinney v. Hand, 153 Pa. 404; Simmons v. R. R., 199 Pa. 232; Blaker v. Electric Co., 60 Pa. Superior Ct. 56; Luckett v. Reighard, 248 Pa. 24.

In the absence of proof of any changed condition the presumption is that the servant remains the servant of his original employer.

*Thomas & Thomas,* for appellee.

OPINION BY MR. JUSTICE KEPHART, May 19, 1924:

Appellee was the owner of a number of motor trucks leased or hired, used in connection with the improvement of the Perry Highway, to haul material from a tipple in Kerrtown, Crawford County, to a concrete mixer, the work being done under contract with the Divine Construction Company. The trucks had just finished a similar engagement at Smethport and Kane. One of the trucks struck plaintiff's husband, killing him. The court below directed the jury to find for defendant in the action for damages, and this appeal followed.

In passing on the record before us, plaintiff's testimony must be taken in its most favorable light. She is entitled to the benefit of every inference that may be drawn from it: Derrick v. Harwood Electric Company, 268 Pa. 136. The single question which the court below was called on to decide was whether there was sufficient evidence to submit the case to the jury. In answering this it is immaterial how strong defendant's testimony may be: Duffy v. York Haven Water & Power Co., 233 Pa. 107.

To charge with liability for damages due to a motor accident where it appears defendant owned the car, it must be shown the driver was his servant and at the time engaged in his master's business: Scheel v. Shaw, 252 Pa. 451, 460; Treon v. Shipman & Son, 275 Pa. 246. We have held further that where a truck or car is used for business purposes and is identified as the property of the owner, a presumption arises that the truck was engaged in the master's business: Sieber v. Russ Bros. Ice Cream Co., 276 Pa. 340, 344. (There is a distinction between pleasure cars and business trucks as to the quality of proof required to establish liability.) This presumption continues until the contrary appears, which is shown

when the testimony to establish nonuser in the master's business comes from a disinterested witness whose candor cannot be doubted, and is not in itself improbable or at variance with proved or admitted facts or with ordinary experience. See Gojkovic v. Wageley, 278 Pa. 488, 491.

The question as here presented by the record may be stated thus: Is one engaged in the business of hiring or leasing trucks, furnishing a driver, responsible for damages caused through negligent driving while the truck is engaged by the lessee? The negligence of the servant is not discussed as it is admitted the question is, Whose servant was the driver?

Appellee does not deny the hiring engagement, the duty to furnish a driver, and that this was a part of his general business. The wages of the driver and the expenses of operating the car were paid by the owner, appellee. The compensation for the present hiring was so much "per batch mile" for all loads hauled. Lessor was, then, interested in having his trucks make as many trips as possible. This fact, however, will not be considered in deciding the general question. The owner, through the driver, had sole control of driving, speed, operation, in fact complete management of the truck as it performed the work for which it was leased. The lessee did not attempt to interfere with that control or direct how the truck should be driven, or its mechanical operation. But the lessee did assign the work to be done, and possibly the selection of a road.

The duty rested on the owner or lessor to furnish a competent man, with skill and experience necessary to perform the work incident to a somewhat dangerous employment. Whether this has been done is ordinarily for the jury. The lessee of a truck may expect the owner to carefully comply with his duties in this regard. The lessor cannot place an incompetent or reckless person in charge of a machine and expect to escape responsibility for reckless driving; nor can he in any case, where the negligence of his servant was the cause of the accident.

See 2 Street, Foundations of Legal Liability 458, 459. The person leasing generally knows nothing of the driver's competency or habits; he merely hires the truck to do a certain piece of work,—here to move material from the cars to a concrete mixer about a mile distant, —and depends on the lessor to furnish a proper machine with a competent driver. While the lessor could not control the work to be done, under the facts now before us he never for a moment parted with the control of his servant in the operation or management of the truck. The lessor had nothing to do with the time or place where the truck worked, the manner in which the load or batch was received, the route over which it traveled or its discharge unconnected with the mechanical working of the truck; all these were subject to the absolute direction and control of the lessee. The specific and important service for which this driver was employed and the truck hired, and for which appellee was directly responsible, was the operation of the truck in transporting freight from cars to the mixer. This was in the exclusive control of the driver.

We are not ignoring the line of cases holding a master may lend or hire his servant to another for a particular employment and not be liable for an accident while the servant is so employed by the person to whom he is hired or loaned. But this is not the law where it appears the injury was done by his servant while in the ordinary course of his original master's business. If one "hires out" a horse and wagon, with a driver, to perform a certain service for another, the master is liable for any injury caused by reason of his servant's negligence in the course of his employment, to wit, driving the vehicle. Of course, if the injury is done in the performance of an act wholly disassociated from the employment, no liability would attach: Puhlman v. Excelsior E. & S. C. Co., 259 Pa. 393, 399.

One in the general service of another may be transferred for specific service to a third person, who, with re-

spect to that service, assumes all legal consequences of the new relationship. To determine in a given case, where a servant is occupying this dual relationship, to which the master's liability attaches, inquiry must be made as to whose work is being performed. This question is usually answered by ascertaining who has the power to control and direct the servant in the performance of the work, or under whose supervision and to whom is the servant directly responsible for the specific work that he is engaged in performing. See Standard Oil Company v. Anderson, 212 U. S. 215. A typical case may be found in McNamara v. Peipzig, 227 N. Y. 291, 125 N. E. 244.

Caution must be given and care should be taken not to confuse cases like the instant one with those decided by this court where the owner lends his car and chauffeur to another or where the hiring is no part of the owner's regular business, or where the user of the car supplies his own driver. Other illustrations might also be given.

It follows from what we have just said and from the evidence which we hereafter quote, that where one is engaged in the business of "hiring out" trucks, and furnishing a driver as part of the hiring, when an accident happens in the course of that hiring the owner of the truck is liable in damages. The presumption is that if the injury happened while the driver was operating the truck, it was in the original master's business, as it occurred in doing the specific thing the driver was engaged by the owner to do, and to whom the driver was directly responsible. Like all presumptions of fact, it may be rebutted. But this rebuttal is not conclusively shown from the testimony in this record. Indeed, the contest seems to have been waged about the identity of the renter. In the light of plaintiff's evidence, recited below, this is immaterial; whether the truck was hired to Divine, or to Divine through Burns, or to Burns, would not control appellee's liability; nor is it important, since appellee admits he leased the truck to another and the accident hap-

pened at the time the truck was in attendance at the work for which leased. Appellee's driver was operating the truck when the man was struck; the accident occurred in the master's business. Of course this state of facts did not preclude defendant from showing the accident happened while the driver was acting under specific orders of the lessee, or the latter had interfered with the control, operation and management of the car. Every exculpatory defense was available to defendant, but the court below was in error, after plaintiff made out a prima facia case, in withdrawing it from the jury. The evidence particularly bearing upon what we have just discussed is as follows, defendant being on the stand: "Q. You said you had three trucks upon this job. You are in the truck business, that is, to keep trucks and work them out, do you not? A. Coal business is my regular business. Q. But you do keep trucks and work them out. A. Yes, sir. Q. You have fellows in charge of them? A. Charge of the trucks, yes, sir. Q. And on this occasion, on this particular truck you had Earl Proven in charge? A. Yes, sir. Q. And you say he had been in your employ since July or the first of August of that year? A. Yes, sir. Q. And he was working the truck on the job when you say you were here on one or two occasions? A. Yes, sir. Q. And you have been asked whether you had any interest in the hauling of this material or in the business up here and you said none other than the pay of your truck. You had hired your truck out. That was right, was it? A. Yes, sir. Q. You mean that you were not interested in the Divine contract? A. Yes, sir. Q. You were getting your pay, however, from Mr. Divine? A. From Mr. Burns. Q. But the pay came from Mr. Divine? A. Yes, sir. I don't know where it come from. I got my pay from Mr. Burns. Q. After the truck was damaged here by this collision, what was done with the truck? A. The truck was taken to this garage here in Kerrtown and repaired." It follows therefore that the court erred in holding the presumption that the truck was being used

in the business of the employer was completely over-thrown. The business of the employer included the operation and driving of the car while engaged in the service for which leased.

Judgment reversed, and a new venire awarded.