## Cusick et ux., Appellants, v. Hutchison.

Argued January 28, 1935. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Robert G. Coglizer,* for appellants.

No appearance was made, nor brief filed, for appellee.

OPINION BY MR. JUSTICE DREW, April 1, 1935:

Plaintiffs sued in trespass for the death of their minor child, alleged by them to have been caused by the negligence of defendant's servant. At the close of plaintiffs' testimony, a compulsory nonsuit was entered by the court below, and from the denial of their motion to take off the nonsuit plaintiffs have appealed.

The only question raised by the appeal is whether the servant, Evans, was acting within the scope of his employment at the time of the accident. His testimony disclosed that he had been employed to operate a steam roller in the construction of a public highway which defendant had contracted to build for the Commonwealth. It was his custom to drive to and from his place of employment in an automobile which belonged either to him or to his brother—which was the owner does not clearly appear from the evidence. On the morning of the accident, Evans had been operating the roller "half an hour or so" when "a stud pulled out of the main bearing." He testified: "It wouldn't run then, so I worked around a while and tried to fix it. I found out I couldn't fix it there with what I had. So I went up to Gus Anderson [the foreman in charge]. I told him what had happened. I told him I guessed I would have to go to Scranton for the part, that was the only way I could see. And he said that was about the only thing you could do." Thus authorized, Evans started out for Scranton, seven miles

distant, in the automobile in which he had driven to work, there being no bus service or other way of reaching his destination except by walking. The accident occurred in the course of the trip into Scranton.

We are convinced that Evans's testimony was sufficient to present a question for the jury. It pointed plainly to the conclusion that Anderson, the foreman in charge, had supervisory authority over the continuance and completion of the work, and disclosed that Evans consulted him before undertaking the trip and received his express authorization of it. From the testimony that Anderson was "the foreman there," was "in charge of" the "immediate work," and directed Evans in the operation of the road machine, a jury might reasonably infer that Anderson had authority to take whatever steps were reasonably necessary to keep the roller in operation, in order to carry on the construction, and that it was therefore within his authority to authorize Evans's trip to Scranton for the new part. The testimony shows that the operation of the roller was an essential factor in the construction of the road, and that the roller could not be used until a new part was obtained. A jury might fairly conclude that such a part could not have been procured at any nearer place than Scranton, and that the use of the automobile was the most reasonable way of getting there. The fact that the automobile which Evans was driving did not belong to the master does not prevent the application of the doctrine of respondeat superior: Petruska v. Packard Motor Car Co., 83 Pa. Superior Ct. 112; see Loper v. P. G. Pub. Co., 312 Pa. 580.

That it was even Anderson's duty to have the machine repaired as promptly as possible after it broke down, and that his authorization of Evans's trip was a prudent exercise of that duty, would be an entirely reasonable inference from the latter's testimony. It is difficult to see how either Evans or Anderson could have acted more faithfully, or what steps they could have taken which would have been better calculated to please defendant. He

could hardly have expected either of them to walk to Scranton, or to seek him out in order to ask his permission before going, and thereby delay the continuance of the work so much longer. Undoubtedly he would have approved of their action if the accident had not happened. Under these circumstances, it was for the jury to say whether Anderson's authorization of the trip was proper and whether Evans was therefore acting within the scope of his employment at the time of the accident.

In directing the nonsuit, the court below relied principally on Wesolowski v. John Hancock Mut. Life Ins. Co., 308 Pa. 117, in which it was held that the defendant insurance company was not liable for an accident caused by the negligence of its soliciting agent in operating his own car while on his way to make collections for the company. There, however, the agent's territory was less than a square mile within the city of Philadelphia, and in no sense was the use of an automobile necessary for the performance of his duties within that territory. The company obviously did not intend that an automobile should be used in the transaction of its business; the fact that the agent had his own car and used it in his work was a matter of complete indifference to the company. In the instant case it was a fair inference that the roller had broken down completely, that its operation and consequently the continuance of the construction were wholly dependent upon the obtainment of a new part, and that under the circumstances the only reasonable way of obtaining it was for Evans to go to Scranton for it in his automobile. In view of that fact, the express authorization of the trip by the foreman in charge, who was undoubtedly entitled to speak for the master in the latter's absence, could fairly be said to have been within his supervisory authority, and Evans's use of the automobile in accordance with that authorization might thus reasonably have been found to be within the scope of his employment. Accordingly, the court below should have sub-

mitted the case to the jury, and its refusal to take off the nonsuit was error.

Judgment reversed and a procedendo awarded.