## Sinclair et al. *v.* Perma-Maid Co., Inc., Appellant.

Argued May 12, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Harold Scott Baile,* with him *Pepper, Bodine, Stokes & Schoch,* for appellant.

*I. S. Bernstein,* for appellees.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, June 29, 1942:

Plaintiffs were injured when struck by an automobile owned and driven by Paul M. Owen. He was a salesman, selling cooking appliances for defendant. His remuneration was solely by a commission on the articles sold. Is defendant responsible in damages for his lack of care? The trial court and the Superior Court determined it is.

Owen came into defendant's employ as a result of a newspaper advertisement, which read in part: "Men with cars. The Philadelphia Office of the Perma-Maid Co. . . . Men with the following qualifications: must have car; twenty-five or over; married; good appearance; must talk well. . . . Advanced commissions. . . . Apply . . .". Owen applied to defendant, with the result that it entered into a salesmanship contract with him, the material parts of which read: "The company hereby appoints the said salesman as one of its representatives to sell 'Perma-Maid' specialties. . . . The salesman agrees to send in reports each week in the form provided by the company and to carry out his obligations under the contract under the direction and control of the company or any of its duly authorized representatives, it being understood that failure to do so gives the company the right to cancel this contract. It is further understood that the direction and control reserved herein by the company shall extend only to the results sought to be accomplished under this contract, and to the right to question the sufficiency of the said results as measured by the requirements of this contract." The contract provided for a commission ranging from 20% to 25%. Nothing was said in the contract about the salesman having a car. However, Owen did have a car and so informed Ryan, defendant's sales manager, who negotiated the contract with him.

The method of developing sales pursued by the company consisted in interesting householders in cooking utensils which were offered for purchase. They were carried in a container which, with its contents, weighed forty-two pounds. The manner of interesting prospective customers was by Owen or the district manager arranging with a housewife to invite a number of her friends to her house for dinner. It was Owen's duty on these occasions to supply the food at his expense and to prepare and cook the dinner in the house with his kit of equipment, which he carried in his car, and to serve it with the help of a maid, who was employed and paid by him. Following the dinner, he delivered what was called a "health lecture" to the group, stressing the merits of defendant's appliances. He then took the names of all the guests and later called upon each of them in an effort to interest them in buying. When he injured plaintiffs, he was proceeding from one prospective customer to another. The district manager had told him to make the calls.

In traveling Owen used his own automobile, paid for the gas and oil that was required, saw to the maintenance of the car and to the expense of keeping it in a garage, receiving no traveling expense allowance, fixed his own routes for traveling and was in sole control of the actual operation of the automobile.

It is argued in plaintiffs' behalf that the use of a car by the salesman was a necessary prerequisite to the employment and was essential under defendant's method of carrying on its business, because on the occasion of a demonstration dinner, in addition to the kit of cooking utensils, Owen was obliged to carry the foodstuffs and bring a maid with him. It is further contended that defendant recognized the status of Owen as an employe and servant by deductions from his commissions for social security payments, by requiring him to report to defendant's district manager for instructions and to submit to his direction and control, and that these circumstances make defendant liable for his torts com-

mitted while he was engaged on its business. It is conceded that the use of an automobile was mutually advantageous to facilitate the salesman in the performance of his work and that it may be accepted as a fact in determining the question before us that Owen was required by defendant to have an automobile.

The controlling principle in cases such as this is set forth in *Wesolowski v. John Hancock Mutual Life Ins. Co.*, 308 Pa. 117, 162 A. 166. We have followed this case in all subsequent ones.* We there fixed two bases for liability for an employer, (1) "that the automobile was under the defendant's actual or potential control at the time and place in question"; (2) "that the use of the automobile by the agent and servant was of such vital importance in furthering the business of the master that the latter's actual or potential control of it was a legitimate inference." As to the first, the circumstances in the present case show that the automobile was not under defendant's actual or potential control *at the time and place of the injury,* but as to the second, it is obvious that the use of his automobile by the agent was of vital importance in furthering the business of the principal. An employer, in the furthering of whose business it is of vital importance that an automobile shall be used, cannot, by providing that the automobile shall be furnished by his agent or servant, shift responsibility from himself for an injury negligently caused by the operation of the automobile. Owen could not have performed his duties, in the manner required by his employer, unless he made use of an automobile. Under such circumstances, defendant is liable for the negligent operation of the vehicle so used.

The judgments are affirmed.

---

* *Loper v. P. G. Publishing Co.*, 312 Pa. 580, 169 A. 374; *Cusik v. Hutchison,* 318 Pa. 316, 177 A. 749; *Davis v. Pitt Publishing Co.,* 324 Pa. 449, 188 A. 291; *Heinrich v. Pictorial Review Co.,* 326 Pa. 470, 192 A. 645; *Barr v. Anchorage Inn Co.,* 328 Pa. 378, 196 A. 21; *Holdsworth v. Penna. Power & Light Co.,* 337 Pa. 235, 10 A.2d 412; *Gittelman v. Hoover,* 337 Pa. 242, 10 A.2d 411.